UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CONNIE CLINGERMAN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:05-CV-407 RM |
| | ) | |
| MICHAEL J. ASTRUE,[1] | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant | ) | |

OPINION AND ORDER

Connie Clingerman seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423. The court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g). For reasons that follow, the court affirms the Commissioner's decision.

Ms. Clingerman alleges disability as of June 15, 2002, due to brittle diabetes mellitus and depression. Her claim was denied initially, on reconsideration, and following an administrative hearing on October 27, 2004, at which she was represented by counsel. The administrative law judge (ALJ) heard testimony from Ms. Clingerman and a vocational expert. The ALJ concluded on

---

[1] Michael J. Astrue, the current Commissioner of Social Security, has been automatically substituted as the named defendant, pursuant to Fed. R. Civ. P. 25(d)(1).

the basis of the evidence presented that Ms. Clingerman was not under a disability as defined by the Act at any time through the date of decision. When the Appeals Council denied her request for review, the ALJ's decision became the final decision of the Commissioner of Social Security. See 20 C.F.R. §§ 404.955, 404.981; Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). This suit followed.

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited. 42 U.S.C. § 405(g); Jones v. Shalala, 10 F.3d 522, 523 (7th Cir. 1993). A court must sustain the ALJ's findings so long as they are supported by substantial evidence. 42 U.S.C. 405(g); Scott v. Barnhart, 297 F.3d 589, 593 (7th Cir. 2002); Schoenfeld v. Apfel, 237 F.3d 788, 792 (7th Cir. 2001). The term "substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  A court may not substitute its judgment for that of the ALJ by reconsidering the facts, re-weighing the evidence or resolving factual disputes. Scott v. Barnhart, 297 F.3d at 593; Maggard v. Apfel, 167 F.3d 376, 378 (7th Cir, 1999). The reviewing court may not reconsider credibility determinations made by the ALJ unless those determinations are patently wrong. Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001); Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).

The ALJ need not discuss every piece of evidence in the record, Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001), but the decision must

demonstrate the path of his reasoning, and the evidence must lead logically to his conclusion. Rohan v. Chater, 98 F.3d 966, 971 (7th Cir. 1996). Remand is required if the reviewing court cannot discern an "accurate and logical bridge between the evidence and the result." Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996).

BACKGROUND

At the time of the administrative hearing, Ms. Clingerman was 50 years old, had a G.E.D., and had previously worked as a certified nursing assistant ("CNA"), group-home manager, and school-bus monitor. Ms. Clingerman testified that her ability to work was affected by uncontrolled diabetes, as well as retinopathy, stress and anxiety, carpal tunnel syndrome, neuropathy in her legs, hands and arms, stomach and bowel problems, poor memory and neurogenic bladder. She stated that she periodically passes out due to low blood sugar, and falls due to numbness and pain in her legs, once breaking her leg. She testified that she has poor dexterity, and can sit for 30 to 45 minutes at a time before needing to stretch her legs, and can walk for forty-five minutes to an hour at a time. She testified that she can lift a gallon of milk, but cannot walk with it because she feels unbalanced. Ms. Clingerman stated that her daily activities included taking care of two dogs, taking various medications, checking her blood sugar levels, doing housework, watching television, eating meals and napping.

Vocational expert Dr. Leonard Fisher testified that the claimant's previous

positions as a CNA and group-home manager were semi-skilled, medium work according to the Dictionary of Occupational Titles. He testified that a claimant who was limited to light work would have no transferrable skills from those previous positions to a new light-duty position. He also testified that a claimant limited to light, unskilled employment including simple, routine, repetitive tasks, but not including climbing up ropes or scaffolds or work around unprotected heights, could perform Ms. Clingerman's previous job as a school-bus attendant, which is a light, unskilled job according to the Dictionary of Occupational Titles. He testified that Ms. Clingerman could return to that position.

Dr. Fisher also testified that Ms. Clingerman was able to perform a variety of light, unskilled jobs such as office helper, parking-lot attendant, and maid. Dr. Fisher testified that based upon federal, state, and local statistics recognized by the Social Security Administration for use by vocational expert's in disability hearings, more than 3,000 available positions amenable to Ms. Clingerman's limitations were available within the greater Fort Wayne area. He stated that if Ms. Clingerman's work were even further limited to sedentary work, there were 600 to 1,200 available positions in the greater Fort Wayne area, based on those same statistics.

Ms. Clingerman's attorney asked Dr. Fisher if any jobs are available for a hypothetical claimant with all of the limitations already mentioned, but who also:

> has blurred vision approximately, two times a week lasting up to an hour and can use her hands only occasionally for simple grasping and fine manipulations and passes out or is in diabetic coma

4

> approximately, 3 to 4 times a month and has the after effects that the claimant described consisting of weakness and confusion that lasts up to a day[.]

Dr. Fisher replied, "Not full-time that I know of, no." Ms. Clingerman's attorney asked what work would be available for another hypothetical claimant who:

> is able to lift less than ten pounds occasionally, stand and or walk for less than two hours in an 8 hour work day, sit for less than 6 hours in an 8 hour work day, has limited ability to push and pull with her upper and lower extremities, can never climb, balance, kneel, crouch, crawl or stoop, can only occasionally reach, handle, finger and feel, and has limited vision [meaning blurred for an hour twice a week.

Dr. Fisher replied, "No work. No competitive work."

While the medical evidence generally supports Ms. Clingerman's testimony as to the nature of her medical conditions, the ALJ found that it did not support her testimony as to the extent of her limitations. Dr. Mulry's July 9, 2004 "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" indicated that upon examination, Ms. Clingerman was able to lift and/or carry less than 10 pounds either frequently or occasionally, stand less than 2 hours in an 8-hour work day, sit less than 6 hours in an 8-hour work-day, was unable to push and/or pull with her upper and lower extremities at all, and requires a walker.

The October 28, 2002 internal medical examination from the Social Security Administration's consultant, Dr. Phillip Budzenski, indicated that upon examination, Ms. Clingerman reported dizziness but evidenced no findings suggesting difficulty with balance; that she is able to perform all of her basic activities of daily living; and that she took a treadmill test in the past, the results

5

of which were normal. The doctor found that she was obese; had normal gait, which was not unsteady, lurching or unpredictable; and was able to walk on her toes, walk on her heels, tandem walk, stand on either leg alone, and perform a squat maneuver without difficulty. Dr. Budzenski found that her visual acuity was reasonably normal in light of her diabetic retinopathy. He noted that she was stable at station and appeared comfortable in seated and supine positions; her memory for recent and remote medical events was intact; her intellectual functioning was grossly normal; and she had a slightly flat affect. In the doctor's assessment, he indicated that Ms. Clingerman's diabetic lows appear to be self-induced through a cycle of increasing caloric intake and in turn increasing insulin dose. Although Dr. Budzenski found that Ms. Clingerman did have uncontrolled type II diabetes mellitus, he opined, "given large changes in blood sugars with small amounts of insulin, most likely she is not a brittle diabetic."

Dr. Budzenski concluded that Ms. Clingerman was able to lift 10 pounds continuously and 20 pounds occasionally, had full use of her bilateral upper extremities for grasping, pushing, pulling or manipulating, and had full use of her bilateral lower extremities for operating foot controls. He indicated that she should be able to work around machinery, but not operate hazardous machinery or automotive equipment due to her fluctuating blood sugars. He also noted she should have no additional difficulties working in extremes of temperature or humidity, or with exposure to dust, fumes, or gas, and should be able to bend, squat or crawl, but not climb or work around unprotected heights.

In March 2003, Dr. Roush completed a physical residual functional capacity assessment that contained findings similar to those of Dr. Budzenski. Dr. Roush's primary diagnosis was diabetes uncontrolled, his secondary diagnosis was diabetic retinopathy, and he also noted obesity under "other alleged impairments." Dr. Roush opined that Ms. Clingerman was able to lift 10 pounds continuously and 20 pounds occasionally, stand and/or walk for about 6 hours in an 8-hour work day, and sit for 6 hours in an 8-hour work day; had unlimited ability to push and/or pull including operation of hand and/or foot controls; and had no manipulative, visual, or communicative limitations. He also noted that Ms. Clingerman had denied vertigo upon examination.

In his decision, the ALJ accorded greater weight to the assessment by Dr. Budzenski than to Dr. Mulry's assessment. The ALJ found that the evidence did not support Dr. Mulry's July 2004 opinion. The ALJ noted:

> The chronological records indicate the claimant's Diabetes was becoming better controlled. Although she was recovering from a broken leg, the limitations secondary to the injury would be temporary. It appears the physician included these restrictions in his evaluation. Although Dr. Mulry opined the claimant can lift less than ten pounds, and stand, walk, or sit for less than 2 hours in an 8 hour workday, he does not indicate specific reasons or long term impairments that would substantiate such limitations. The same holds true for his opinion that the claimant was unable to push or pull at all with her upper extremities, and only occasionally reach, handle, finger, or feel with her hands.

The ALJ stated that Dr. Mulry's opinion was in contrast to the doctor's own treating records, and suggested that sympathy for Ms. Clingerman may have motivated the opinion. The ALJ therefore declined to give controlling weight to Dr.

7

Mulry's opinion.

Relying on Dr. Budzenski's report and the vocational expert's testimony, the ALJ found that Ms. Clingerman was not disabled as defined by the Act at any time through the date of his decision.

Ms. Clingerman argues that the ALJ made three errors: (1) in weighing the medical evidence, he improperly evaluated the opinion of treating physician Dr. James Mulry; (2) upon discovering a lack of factual support in Dr. Mulry's reports, he failed to re-contact the doctor; and (3) he failed to consider Ms. Clingerman's obesity in combination with her other impairments.

DISCUSSION

Ms. Clingerman first asserts that the ALJ improperly evaluated Dr. Mulry's opinion. She concedes that her diabetes was better controlled, and that she suffered several ailments secondary to the diabetes. She also concedes that improvement in the secondary conditions is expected, but argues that good control of the diabetes will not necessarily stop progression of a diabetic complication once damage has been done. Assuming this is true in some cases, Ms. Clingerman has offered no evidence that it is true in her case. No evidence in this record supports the contention that once a claimant experiences complications secondary to diabetes she will forever suffer those complications.

Ms. Clingerman contends that the ALJ failed to cite any medical opinion that there will not be permanent restrictions as a result of the broken leg. She

8

concedes that, "Dr. Graber and the X-ray interpretations mostly indicate that the fracture is healing well and that she is doing well," but argues "there is no specific opinion regarding whether she might have permanent limitations from the fracture." She contends that the ALJ was required to take into account a change in condition, *i.e.*, the broken leg, when evaluating Dr. Mulry's decision. Clifford v. Apfel, 227 F.3d 863, 871 (7th Cir. 2000). The court's reading of the ALJ's decision shows that the ALJ considered Ms. Clingerman's broken leg and implicitly assumed that it was a temporary condition. Ms. Clingerman maintains that this assumption was outside the scope of medical judgment the ALJ is permitted to exercise, citing Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000), and a variety of other cases which stand for the proposition that the ALJ may not "play doctor."

Ms. Clingerman argues that since only Dr. Mulry's opinion of total disability accounted for limitations due in part to the broken leg, the ALJ was wrong to assume, without medical evidence indicating that the fracture had healed, that the fracture was temporary. She concedes, as she must, that the record contains no medical opinion as to possible long-term limitations relating to the broken leg. Thus, there is no physician's opinion for which the ALJ substituted his own. Absent medical evidence, it was reasonable to assume, especially in light of Dr. Graber's finding that the leg was healing well, that the broken leg would heal normally. It would be patently unreasonable for the ALJ to work from the assumption that the healing leg would remain impaired indefinitely.

Ms. Clingerman also argues that the ALJ should have given controlling

9

weight to Dr. Mulry's opinion because she had been diagnosed with osteopenia and "possible carpal tunnel syndrome" after Dr. Budzenski examined her. She thus concludes that Dr. Mulry's opinion "is the only one that could be based on all of the underlying medical problems." But Dr. Mulry's July 2004 report didn't mention osteopenia; thus, there is no reason to assume that his opinion as to her limitations is based upon that diagnosis. He mentioned possible carpal tunnel syndrome, but the diagnosis was not confirmed, and does not, in and of itself, provide a basis for rejecting the ALJ's assessment of the medical evidence.

Since the ALJ articulated his reasoning for declining to give controlling weight to Dr. Mulry's opinion, evaluated that opinion in light of the medical evidence, and didn't substitute his own opinion for that of a physician, substantial evidence supports his evaluation of Dr. Mulry's opinion.

Ms. Clingerman contends that the ALJ was required, but failed, to recontact Dr. Mulry for additional information, citing Barnett v. Barnhart, 381 F.3d 664, 669 (7th Cir. 2004). Barnett relied on 20 C.F.R. §404.1527(c)(3), which then read:

> If the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence under the provisions of §§ 404.1512 and 404.1519 through 404.1519h. We will request additional existing records, recontact your treating sources or any other examining sources, ask you to undergo a consultative examination at our expense, or ask you or others for more information. We will consider any additional evidence we receive together with the evidence we already have.

Barnett v. Barnhart, 381 F.3d at 669. There was clearly inconsistent medical

10

evidence in Ms. Clingerman's case, and there is no claim that the agency lacked sufficient evidence to decide whether Ms. Clingerman was disabled. On the contrary, the ALJ explicitly found that the evidence indicated that Ms. Clingerman was not disabled. This finding was based in part on the determination that Dr. Mulry's opinion was inconsistent, and that Dr. Budzenski's opinion was consistent, with the evidence. To say that the evidence does not support a doctor's opinion is not to say that there is insufficient evidence to decide whether a claimant is disabled. The more relevant provision is found at 20 C.F.R. §404.1527(c)(2), which provides:

> If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all of the evidence and see whether we can decide whether you are disabled based on the evidence we have.

That is precisely what the ALJ did: he weighed all of the evidence to decide whether Ms. Clingerman was disabled based on the evidence he had.

In support of her argument, Ms. Clingerman cites Smith v. Apfel, 231 F.3d 433, 437-438 (7th Cir. 2000), which reversed denial of benefits when the ALJ's decision was based in part upon ten-year old X-rays of an arthritic knee. The court stated that the ALJ had a duty to order further X-rays to ascertain the current extent of impairment. In Ms. Clingerman's case, the ALJ's decision did not turn on outdated medical evidence; rather, the ALJ found Dr. Mulry's opinion to lack support in the contemporary evidence.

Ms. Clingerman also cites Smolen v. Chater, 80 F.3d 1273, 1288, which

11

stated "if the ALJ thought he needed to know the basis of [the doctor's] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them." There is no claim that the ALJ felt unable to evaluate Dr. Mulry's opinions without further evidence; rather, the ALJ found that Dr. Mulry's opinion simply lacked evidentiary support.

Ms. Clingerman has not alleged any limitation related to her obesity, but contends that the ALJ's failure to thoroughly discuss it constitutes error. The ALJ cited Ms. Clingerman's obesity in his discussion of Dr. Budzenski's findings, and based his decision in large part on those findings. It can reasonably be inferred from the discussion that the ALJ considered the issue in arriving at his decision. *See* Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004) (where ALJ made no mention of obesity, the court ruled that it was indirectly factored into his decision via review of medical records). The ALJ's failure to discuss Ms. Clingerman's obesity at length does not constitute error.

## CONCLUSION

Viewing the record under the standards that govern review by this court, the court finds that the ALJ's decision is supported by substantial evidence in the record as a whole.  Accordingly, court AFFIRMS the decision.

SO ORDERED.

ENTERED:   March 27, 2007

　　　　　　　　　　　　　　　　　　  /s/ Robert L. Miller, Jr.
　　　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　　　　United States District Court